**In re Hope STINSON, Debtor.**

No. 99–50060.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

May 10, 2001.

Jeffrey W. Farkas, Curtis A. Cockerill, Robert C. Bannerman, The Farkas Law Firm, Columbus, OH, for Debtor.

Sara J. Daneman, Gahanna, OH, Chapter 7 Trustee.

Alexander G. Barkan, Columbus, OH, Assistant United States Trustee.

### *ORDER GRANTING TRUSTEE'S MOTION FOR SANCTIONS*

CHARLES M. CALDWELL, Bankruptcy Judge.

This case is before the Court on a motion ("Motion") filed by the case trustee, Sara J. Daneman ("Trustee"), in which she seeks sanctions against the Debtor, Hope Stinson ("Debtor"). In support of her Motion, the Trustee alleges that the Debtor

failed to timely provide copies of her 1998 tax returns, and has failed to pay to the Trustee the tax refunds. The Trustee seeks sanctions against the Debtor, including payment of the Trustee's attorney fees and expenses, and a monetary award for the amount of the refunds. Based upon the following facts and analysis, and the Court's assessment of the relative credibility of the parties, the Court finds that the Trustee's Motion should be granted. A judgment jointly and severally against the Debtor and her Counsel, Jeffrey W. Farkas ("Mr. Farkas"), shall be entered. What follows is a brief history of this case and findings of fact and conclusions of law.

This case was commenced under chapter 7 of the Bankruptcy Code on January 5, 1999.[1] The Debtor's case attorney was, and remains, Mr. Farkas, of the Farkas Law Firm. The meeting of creditors was held on February 4, 1999, but Mr. Farkas did not appear to represent the Debtor, although he admits his office received notice. Notwithstanding his absence, the meeting of creditors was conducted. At that time the Debtor testified that she had not yet filed tax returns for 1998, and that she did not know whether she would receive tax refunds. The Court finds that during the meeting of creditors the Trustee instructed the Debtor to provide copies of her tax returns to the Trustee as soon as they were filed. The Court further finds that the Trustee also advised the Debtor during the meeting of creditors that any tax refunds she received would be considered property of the Debtor's bankruptcy estate and should be paid to the Trustee. An order of discharge was entered in this case on April 16, 1999.

After missing the meeting of creditors, Mr. Farkas did not contact the Debtor or the Trustee. The Debtor filed her 1998 tax returns in March 1999, and approximately two to three weeks later, she received tax refunds in the amount of $4,478.00. The Debtor promptly spent this money, assisting her mother and young brothers in securing housing after eviction. The Debtor did not submit copies of her tax returns to the Trustee, and did not contact the Trustee regarding the returns or the refunds. What follows is a long list of efforts of the Trustee to obtain very basic cooperation and compliance from the Debtor and Mr. Farkas.

On May 5, 1999, the Trustee sent a letter to Mr. Farkas, and a copy was mailed to the Debtor ("May 5th Letter"). In the May 5th Letter, the Trustee advised Mr. Farkas that the issue of the Debtor's tax returns and refunds was discussed at the meeting of creditors, and that the Trustee had requested copies of the returns. As of the May 5th Letter, the Trustee still had not received copies of the returns, so she demanded them, as well as payment of any refunds the Debtor had received. Mr. Farkas and the Debtor scheduled a meeting for May 15, 1999, and Mr. Farkas then instructed the Debtor to send copies of her 1998 tax returns to the Trustee ("May 15th Meeting"). Subsequently, the Debtor sent copies of her 1998 tax returns to the Trustee, but no payment was included. The record contains no indication that Mr. Farkas advised the Debtor during the course of the May 15th Meeting or at any other time, that her tax refunds were property of the estate, and that she should make arrangements to pay the Trustee.

Approximately a year later, on April 26, 2000, the Trustee sent a second letter to

---

1. Unless otherwise noted, all statutory citations will refer to Title 11 of the United States Code, a.k.a. the Bankruptcy Code.

Mr. Farkas with a copy to the Debtor, in which Mr. Farkas was informed that the Trustee was aware the Debtor had received tax refunds ("April 26th Letter"). The Trustee also stated that tax refunds were property of the estate, and demanded immediate payment from the Debtor. The Trustee further warned that failure to comply with her demand within twenty days would result in the filing of a turnover motion. Mr. Farkas and the Debtor admit that they received the April 26th letter, but took no action.

Approximately two months later, on June 6, 2000, the Trustee filed a motion demanding turnover of the tax refunds ("Turnover Motion"). Mr. Farkas admits he received the Turnover Motion, yet he did not contact the Debtor or the Trustee, and did not file a response. The Debtor asserts that she never received the Turnover Motion because she moved. On June 30, 2000, the unopposed Turnover Motion was granted, and the order was served on Mr. Farkas and the Debtor; yet again neither took any action.

Approximately a month later, on July 7, 2000, the Trustee sent a third letter to the Debtor, enclosing with it a copy of the order granting the Turnover Motion ("July 7th Letter"). A copy of this letter was sent to Mr. Farkas. In the July 7th Letter, the Trustee explained the requirements of the order granting the Turnover Motion and demanded payment of the tax refunds, or in the alternative, that the Debtor contact the Trustee's office within ten days to make payment arrangements. The Trustee warned that failure to comply with her demands would result in a motion requesting sanctions. The Debtor and Mr. Farkas admit receiving the July 7th Letter; yet again neither took any action.

Approximately three months later, on October 19, 2000, the Trustee filed the instant Motion. The Trustee asserted that despite her repeated attempts to obtain payment of the Debtor's tax refunds, the Debtor had failed to comply. The Trustee demanded sanctions, payment of her costs and attorney fees, and payment of the tax refunds. The Farkas Law Firm received the Motion on the day it was filed, through Robert C. Bannerman, an associate of the firm. As a result, Mr. Bannerman sent a letter to the Debtor, encouraging her to make an appointment immediately to discuss the Trustee's Motion.

The Debtor met with Mr. Bannerman and Curtis A. Cockerill, another associate in the Farkas Law Firm, on October 25, 2000. During this meeting, Messrs. Bannerman and Cockerill discussed the Debtor's responsibility to pay the tax refunds to the Trustee. The Debtor testified that she explained she was unable to immediately pay the entire amount to the Trustee, but offered to make monthly payments of approximately $100.00. The Debtor alleges Mr. Bannerman told her this was "not good enough," and proceeded to treat her in such an unprofessional manner that she "fired" him and demanded that only Messrs. Farkas and Cockerill handle her case. On October 31, 2000, Mr. Cockerill filed a response to the Trustee's Motion. Mr. Cockerill signed the response "per authorization" for Mr. Farkas. The response did not refute the substance of the Trustee's Motion. Instead, it was represented that $2,600.00 of the tax refunds had been garnished by an undisclosed entity, applied toward the Debtor's student loan, and that the balance had been spent in assisting her family. This representation proved false, as the Debtor testified that no amount of the refunds had been garnished, but that the entire amount had been spent assisting her family.

The Trustee's Motion and the Debtor's response came before the Court for hearing on December 19, 2000. During the

December 19, 2000, hearing, the Trustee detailed her efforts to obtain copies of the tax returns and payment of the tax refunds. The Debtor testified as to what happened at the meeting of creditors and as to the disposition of the tax refunds. She also reiterated her offer to pay $50.00 bi-weekly to the Trustee. She stated that she remembered the Trustee advising her to provide copies of the tax returns, but did not remember being informed that she would be required to pay any tax refunds to the Trustee. The Court, however, does not find it credible that the Trustee would have issued instructions on the returns, but not the refunds, especially in view of the great efforts expended by the Trustee to collect the refunds subsequent to the meeting of creditors. As to her discussions with Mr. Farkas prior to the meeting of creditors, the Debtor simply testified that, "[t]he only thing that Jeff asked me was have I filed my tax returns. I just stated no. That was the end of that."

Mr. Cockerill appeared on behalf of the Debtor at the December 19, 2000, hearing. He stated that he did not know what, if anything, the Farkas Law Firm did in response to the May 5th Letter, the April 26th Letter, the Turnover Motion, the order granting the Turnover Motion, or the July 7th Letter. He also stated he did not know whether anyone appeared with the Debtor at the meeting of creditors or what, if anything, the Farkas Law Firm did for the Debtor after the meeting of creditors.

After the December 19, 2000, hearing, and given the vague statements of Mr. Cockerill, the Court issued an order that continued the hearing to January 26, 2001. This order also provided that:

> Based on statements of counsel and testimony elicited, the Court has determined that additional testimony will be required from Debtor's counsel, Jeffrey Farkas, and any other attorney in the Farkas firm that has any knowledge with reference to this case. The testimony shall include any contact with the Debtor and/or any other efforts to comply with any requests of the case trustee and order for turnover. The testimony shall further include an explanation why no counsel appeared with the Debtor during the creditor's meeting, and shall detail any contact made with the Debtor with reference to tax returns and/or refunds after the creditors' meeting.

The order required Mr. Farkas and any other attorney in the Farkas firm that had knowledge regarding the case to attend the continued hearing. The order further required Mr. Farkas to serve the Trustee with copies of any documents that evidenced contact or attempts to contact the Debtor regarding the tax returns and/or refunds and compliance with the Turnover order. On January 24, 2001, the Farkas Law Firm and Mr. Bannerman filed memoranda in response to the Court's order. At the January 26, 2001, hearing, the Court heard extensive testimony from the Debtor, Mr. Farkas, Mr. Bannerman and Mr. Cockerill.

Mr. Farkas, in particular, attempted to demonstrate that he had adequately counseled the Debtor as to the tax returns and refunds by producing a document captioned "Bankruptcy Rights and Duties." This nine-page document explains a consumer debtor's rights and responsibilities under the Bankruptcy Code, and includes information concerning tax returns and refunds. Each client of the Farkas Law Firm is instructed to read the document, initial each applicable paragraph, and sign it. The Debtor admitted she read and signed a copy of this document the day before this case was filed.

The Trustee's Motion was grounded upon section 521(3) of the Bankruptcy

Code, and upon LBR 4002–1, which provide, in relevant part:

*The debtor shall—*

(3) if a trustee is serving in the case, *cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title.*

11 U.S.C. § 521(3) (emphasis supplied).

(a)(1) **Requests by Case Trustee.** The debtor shall comply promptly with all trustee requests for information whether oral or written. *Not later than twenty (20) days after service of any written request on the debtor and the debtor's counsel, debtor shall serve on the trustee the information and/or documents requested; or serve on the trustee and file a written motion for a protective order, a memorandum in support and a request for hearing.*

. . .

(c) **Sanctions.** *Failure to comply with a trustee's request for information* may result, after notice and hearing, in the imposition of sanctions.

LBR 4002–1 (emphasis supplied).

■ A chapter 7 debtor has an affirmative duty to cooperate with the case trustee in the administration of the bankruptcy estate. 11 U.S.C. § 521(3). This includes a duty to surrender to the trustee all property of the estate. *Turshen v. Chapman,* 823 F.2d 836, 839 (4th Cir. 1987). This duty to cooperate is based upon one of the very simple goals of any chapter 7 case—to maximize the return to creditors through the orderly liquidation of the assets. Where a debtor fails to cooperate with the case trustee, the trustee is then forced to expend estate resources in pursuing the debtor's cooperation, which results in the reduction of the distribution to creditors.

■ Based on the facts as previously set forth, it is abundantly clear that the Debtor has run afoul of section 521(3) and LBR 4002–1(a)(1). *Fitzgerald, Trustee v. Smith (In re Smith),* 1995 WL 241398, *3 (Bankr.D.Idaho April 26, 1995) (finding that debtors/defendants failed to satisfy the duty imposed by section 521(3) by failing to comply with orders requiring them to turn over tax returns and refunds to the plaintiff); *Turshen,* 823 F.2d at 839 (finding that debtor's failure to surrender his tax refunds "clearly violated section 521"). But these same facts also cause the Court great concern about the lack of effective assistance provided to the Debtor by Mr. Farkas. It is the Court's conclusion that the lack of assistance contributed significantly to the errors of the Debtor, and that Mr. Farkas should be held accountable as well.

Mr. Farkas failed the Debtor in three respects. First, he was not present at the meeting of creditors, where the tax returns and refunds were discussed. Had he been there, he could have counseled his client, the Debtor, that she should comply with the Trustee's requests. Such action may have prevented the expenditure of the tax refunds and avoided this collection proceeding. Second, after missing the meeting of creditors and after the refunds were spent, Mr. Farkas failed to respond to two letters from the Trustee (April 26, 2000, and July 7, 2000 letters) and failed to file any response to the Turnover Motion. These failures necessitated the filing of the instant Motion that finally received some attention from associates in the Farkas firm. Third, Mr. Farkas does not appear to have provided adequate supervision to his associates, Messrs. Bannerman and Cockerill, as demonstrated by the Debtor's firing of Mr. Bannerman and the inaccu-

rate representations made to the Court by Mr. Cockerill. All of these errors are in no measure diminished by the "Bankruptcy Rights and Duties" form that Mr. Farkas had the Debtor execute. Such forms are not a substitute for providing basic guidance to clients. Accordingly, Mr. Farkas shall be jointly and severally liable for the loss suffered and expenses incurred.

Accordingly, the Trustee's Motion is **GRANTED**. The Trustee is entitled to a judgment jointly and severally against the Debtor and Mr. Farkas in the amount of $4,478.00 for the outstanding tax refunds. No later than twenty (20) days following the entry of this order, the Trustee is **ORDERED** to file and serve a statement itemizing the attorney fees and costs she incurred in pursuing copies of the Debtor's 1998 tax returns and payment of the resulting tax refunds, beginning with the meeting of creditors. Upon reviewing this statement, the Court shall award appropriate fees and expenses to the Trustee, and shall enter a judgment for the fees and expenses and the refunds in favor of the Trustee and jointly and severally against the Debtor and Mr. Farkas.

**IT IS SO ORDERED.**